Good morning. Good morning, your honors. My name is Marissa Malik and I represent the appellate Mr. Moore. I'd like to introduce my colleague, Amy Upshaw, who helped me with the briefing. May it please the court. Your honors, there's only one question that's properly before this court and it's this. Whether the district court properly denied Mr. Moore's amended habeas petition is untimely. On that point, the state concedes error. On page 12 to 13 of its brief, the state of Florida admits that the district court relied on an abrogated and outdated rule of Florida procedure to find that Mr. Moore's state habeas petitions were not properly filed such that they could toll EDPA's one-year statute of limitations. The state of Florida also does not contest that had the court applied the correct rule, it would have determined that the state habeas petitions that Mr. Moore had filed were timely such that it could have, in fact, told the statute of limitations. Having conceded fundamental error on that main question in the COA, Florida should not have pursued this appeal further, but it did and that's why we're here. Your honors, there's a couple of points that the state of Florida makes that I'm going to brief, that I will address very briefly and then I'll sit down unless the court has any further questions. The first thing the state of Florida says, and that's in a supplemental petition that they filed Friday, was that Mr. Moore's state habeas petitions were not properly filed because they are successive within the meaning of Florida rules. Your honor, this type of argument has been squarely addressed by the Supreme Court in Artuse v. Bennett and by this court in the Hardy case. In both cases, the court said the following, that just because a state habeas petition is successive doesn't mean that it's not properly filed within the meaning of AEDPA. Actually, on this point, the state of Florida conceded in a case called Bond v. Moore. That's at 309, F3, 770, Note 1. They conceded this point. So Hardy, I know, is pre-PACE. Artuse is obviously pre-PACE. Does PACE change anything about the rule with respect to successive petitions or do you sort of put successive petitions on the procedural bar end of the spectrum as opposed to the timeliness end of it? That's exactly right, Judge Newsom. PACE is clearly about timeliness. That is a condition for pre-filing. We don't contest that had this petition been untimely, it wouldn't have been properly filed. But even the state of Florida concedes that the petitions are timely filed in this case. And the reason that successive petitions are on the procedural default side of the house and not the timeliness side of the house is because under Florida law, there's some the successive petition. What makes it not a filing condition? Sure. It's that as well as the fact that what Artuse makes clear is really the relevant question is this. Is a petition properly docketed? Does it meet the form requirements? Does it meet the timing requirements? Is it in the right court? There's no question that the state habeas petitions in this case were properly filed because they met the form, because they were timely filed, because they did everything to be considered a petition that was docketed correctly. Whether or not there is a condition that the court would have to look at, dig into, that has nothing to do with it being properly filed, which is what the Artuse decision makes crystal clear. Got it. So sort of within the range of conditions, I won't call them filing conditions, but within the range, the bucket of conditions, timeliness is sort of unique because it exists on the face of the document, whereas procedural default and successive requires some rummaging around. That's right, Your Honor. It's in the filing rules themselves. The question is always is it properly docketed? In this case, it is properly docketed. It's timely. Pates and the cases at the state of Florida sites have to do with untimely petitions. The second thing that the state of Florida says is that even if the claims were timely, the district court didn't abuse its discretion in denying them. It cites Rule 15. The state of Florida seems to suggest that the district court didn't grant Mr. Moore the ability to amend his petition. That's just factually incorrect, Your Honors. The district court did grant him leave to amend under Rule 15. So the Rule 15 argument is frankly a little mystifying. It's not quite clear what the state of Florida is trying to get at. Another thing the state of Florida says is, well, how can the district court have abused its discretion when Mr. Moore didn't cite the right cases or make the right argument? Mr. Moore was proceeding pro se. There is no requirement that I, as an appellate what's really difficult about this argument is that Mr. Moore did identify the correct Florida procedure rule despite proceeding pro se. And yet the district court inexplicably ignored the proper rule that Mr. Moore managed to cite. So that argument sort of falls by the wayside. The last thing the state of Florida says is that the COA was improperly granted for a hodgepodge of reasons, none of which was persuasive. The first thing that the state does is it quibbles with the wording of the COA. It says, well, Mr. Moore's federal habeas petition wasn't completely denied as untimely, only some of the claims were denied as untimely. Judge Hall makes this abundantly clear in the COA. The issue specified is about the petition, but it's a six-page COA order where she makes it abundantly clear what the district court did. And really the wording is sort of points. This court could, if it wanted to, amend the wording of the COA. Do we have to hear? No, I don't believe. The only reason I raise it again is because it certainly does not clearly identify a constitutional issue. Yes, Your Honor. And our law is abundantly clear that it's obliged to do just that. Your Honor, that point is well taken. There are a couple of points that I'll make to this. First of all, it's not abundantly clear that the constitutional issue was not specified. There's a six-page order. Judge Hall does say, when recounting the procedural history of the case, that there are ineffective assistance of counsel appellate claims. She does later on state the proper standard under Slack v. McDaniel. Although she doesn't connect the dots, it does appear that the COA isn't necessarily defective. Your Honors, this is also an argument that the have to amend the COA ourselves? Your Honor. In your view? No. I know that we can. My question is, are we obliged? No, because COAs aren't jurisdictional. Gonzales v. Seller makes that point clear, Your Honors. And in fact, the case that I believe that Your Honor is talking about is Judge Pryor-Spencer decision. Correct. Past Spencer, the court in Negron, despite exactly the same sort of alleged defect in the COA where the constitutional issue wasn't specified, also an appeal from a 59e motion, the court decided, you know, although the statute requires you to spell out the constitutional issue, COAs really are about a gatekeeping function. And your view is it's implicit anyway? It's implicit. And frankly, I believe it's explicit, because she actually does, in going through the analysis, identify the constitutional issue. There's no requirement in AEDPA that you identify the constitutional issue when you're specifying the question presented by the COA. All it says is that the COA order has to specify it. She did. But whether or not it's defective or not really is besides the points, Your Honors, because it's not jurisdictional, because a court, even after the Spencer decision, has looked at these types of appeals, even in lieu of the defective COA, especially in cases like this, where there have been multiple rounds of briefing. You had Mr. Moore's briefing. You had our briefing once I was appointed. You had the state's briefing. Then you had two rounds of supplemental briefing. And you have oral argument today. At that point, the gate's been opened. The cat's out of the bag. You really can't close the gate at that point. All of the resources have been deployed. So I would urge the court to set aside if it finds that the COA is defective. It doesn't have to amend it. It can just proceed to the appeal, especially in this case, which is unlike Negron, where the state concedes error. There is absolutely no question that Mr. Moore's state habeas petitions were timely. If the court is interested in talking about the constitutional issues, I'm happy to go there. There's four ineffective assistance of counsel claims, one of which is a jury instruction that the Florida Supreme Court- No, I don't see any reason for you to address that at this point. Thank you, Your Honor. I do have a question about another point. I thought the closest issue that might affect your case is the Bennett issue. The district court, the second time around, said that it deferred to the 5th DCA in its decision that the petition was untimely. Even if that's wrong, it's possible that we would have to defer to the state court ruling on its own statute of limitations. How do you respond to that? Your Honor, Bennett just simply says when there are opinions without an order, such as the 5th DCA's opinion in this case, we presume that there was a procedural default issue. However, what Artuse makes clear is that procedural default is not the same as a complication that's not properly filed. One of the arguments that the state made was that the second petition was barred on timeliness grounds, but another was that he should have these issues earlier. That's a procedural bar. The procedural bar doesn't make the state application improperly filed, and the district court engaged in baseless speculation when it decided it was time borne. If you looked at the time bar rules, even the state of Florida concedes that the petition was timely filed. If Your Honors don't have any further questions, I'd like to just reserve the remainder of my time for rebuttal. Thanks very much. Thank you, Your Honor. May it please the court, counsel, good morning. Kelly Nealon on behalf of Florida Department of Corrections and Attorney General's Office. First up, I mean it's always baffled me in this case, like I don't know how you told the time for the filing of a petition that's already been filed. These amended claims came 14 months after he filed his petition. He wants the amendments to relate back to the original date right out of the gate there, their time bar. With that in mind, now I'll address the certificate of appealability, which I don't think is sufficient. This court already denied a certificate of appealability on the timeliness of this issue. It's not a legal issue, and there's no showing that the district judge in any way departed from any essential requirements of the law. The district court followed the law out of the Fifth District Court of Appeal, which is the district that Mr. Moore's appeal was held in. I didn't concede anything. I had an ethical obligation to point out a case that I found to this court. That case is not a legal holding. It's the promulgation of a rule of procedure. Even after that rule of procedure came out, there is case law from 2008 in Florida that says the conviction and sentence become final on the date mandate issues from the original appeal, even if the case is remanded for resentencing. Looking at the Florida law that was in effect at that time, I don't think you can say that the district judge clearly erred in its ruling in denying the 60B and the Rule 59 motion. So you deny that the amended rule applies here? The resentencing rule? It probably would have applied if someone would have brought it up. Like I said, the case law that's in effect, there's case law still hasn't been overruled. That rule hasn't been interpreted by any of the courts. The rule was promulgated by the Florida Supreme Court, right? And it says yes. And it says the conviction, because of the confusion that's been out there. It's an effect clarifying, let's call it a, it's like an effect clarifying a circuit split or something. It's just doing it administratively through a rule making. Sure. But I don't think the district court, to whom that rule was never cited, and to the case law that was cited. But how do we ignore it at this time? How do we ignore what the Florida Supreme Court said? I think you don't have to ignore it, but the fact that the district court was following Florida law then. But let's hold aside what the district court said. Are we obliged to accept and apply what the Florida Supreme Court said? And if the answer is yes, isn't that the end of this case? No, I don't think it is. Tell me, tell me one, are we obliged to accept and apply what the Florida Supreme Court said? Yes. Okay. If we do, how do we apply it to this case? Let's accept it wasn't cited to the district court. Everyone missed it, but it's not missed now. And we have to apply it. How do we apply it here? Well, because of the standard of review of the Rule 60B in the Rule 59 is that it has to be a constitutional issue and it has to be a clear error or on the part of the district court judge. So do you concede that if we were here on de novo review that this would be a different case? Are you sort of, your argument sort of rises or falls on the abusive discretion standard or something? Well, and my problem is this was never presented to the district court. By a pro se litigant. A pro se litigant who's quite a prolific filer. Yeah, I think to Ms. Malik's point, he did a pretty good job for a pro se litigant, but the fact that he missed the promulgation of the rule, as Judge Marcus says, it's here before us now. Actually, he, excuse me, he did not cite the new rule, but he did say that the underlying conviction should have become final upon the issuance of the mandate in his re-sentencing appeal, not upon earlier date urged by the state on which his conviction appeal became final. And that is in his reply brief to the 5th DCA at page 472. Yeah, so all he lacked was a citation. He got the substance of the rule right, he just lacked a citation. We don't hang fancy pants big firm lawyers for failing to cite a case if they get the argument. But the case is held just the opposite, is what the problem is. But Carta, the case you relied on, predated the rule change. And there is a case that post-dated the rule change out of the 2nd DCA, which says the exact same thing, that it becomes final on the first round. So, the case law interpreting the rules certainly was not clear in the state of Florida at the time. So, and again, this was never presented to the district court. If we were writing on a clean slate, what's the rule today? That your judge Look to the time of the re-sentencing or the original sentencing? Mandate from the re-sentencing. Okay. And that's what the Florida Supreme Court has told everyone, including us. Well, that's what the rule says, yes. Promulgated by the Florida Supreme Court. Yes. Yes. But your answer to us is that we can and should ignore it because it wasn't presented to the district court, even though it ought to have been. Well, under the standard of review Do I have that right? Under the standard of review of a Rule 60B and a 59E, yes. That's true. I don't think you can fault the district court for something that was never presented to the district court. And again, he filed this habeas petition. I don't see how you can start tolling it in the middle of that. It's like if he had, he filed it 10 days after his conviction was final. He doesn't get somewhere down the road. Well, I get that 80 days that I didn't use before from when I didn't seek review in the United States Supreme Court. He'd already filed his habeas petition, so I don't see how we toll something that's already been filed. He never asked the court to hold it in abeyance. He filed this amendment 14 months after he filed the original one and nine months after the state filed his response. Had the district court decided his case in a more timely fashion, we wouldn't even be here now because he wouldn't have had time to file it before the case was decided. And one other thing I'd like to add is he filed two state habeas petitions. And even if assuming the first one was timely and cognizable, the second one was dismissed by the district court. And the Florida Rules of Appellate Procedure say a court may dismiss a second or successive petition. May. Right, May. Isn't that her point? And it did. But her point is in the sort of on the spectrum of reasons to dismiss a petition, the Supreme Court has made very clear, the U.S. Supreme Court has made very clear that timeliness is in one bucket and procedural default, and she says second or successive, which require a little bit of digging, are different. They're not filing conditions. They're conditions to the obtaining of relief. Which makes all the difference, she says. Well, the reasoning of this court in Jones, and I believe you were on that panel, Judge, is that sometimes you do have to look into the petition to decide whether or not it was timely. Someone can allege newly discovered evidence, and if it's not newly discovered evidence, that motion wasn't timely. And that does not toll the time. Yes, so you're right about Jones. Jones is a timely filing case, and so what we said in Jones is what the Supreme Court said in Pace. When the state court's order is properly construed as a ruling on timeliness, that's the end of the matter. That's just not what we're talking about here, right? There's no timeliness issue here. This is, we're now talking about second or successive. I think it's completely analogous in the reasoning of all the courts that... And what do you do with Artuse versus Bennett, where the court says, with respect to procedural default, it's just different? Because Pace came after Artuse versus Bennett. But Pace distinguishes Artuse and says, this is not about procedural default. This is about timeliness, and it's just different. But analogously, it's not. I mean, you can tell in this. This thing was dismissed as a successive petition. I mean, the AEDPA was... Did you make the successive petition argument in your merits briefs here? No, because Jones wasn't out yet. Okay, I don't think I understand how Jones changes your successive petition argument, since it's about timeliness. See, I'm analogizing the procedure with Pace having come out. There's no difference whatsoever. You have to look at the petition, yes. But it's still improperly filed. The court dismissed it. The court didn't deny it, because it wasn't properly filed. But on that rationale, Artuse versus Bennett should have come out the other way, right? I mean, presumably, the lawyer for the state in Artuse versus Bennett said the same thing. The thing wasn't properly filed. It was procedurally defaulted. How could it possibly be properly filed when it was procedurally barred? And the Supreme Court, I think 9-0 said, you're wrong. But the courts were... After Pace came out, and all the courts were interpreting Artuse as, if you have to look within the petition to determine whether it's properly filed, then it told us the time. But with this type of successive petition, yes, you do have to look within the petition, but that still doesn't make it properly filed. I'm just asking this court to look at Jones in terms of... And the other case that the court decided that day, which even though the Georgia court had the discretion to review an untimely petition, that didn't matter because it didn't review the untimely petition. So it's just trying to enforce these rules that the AEDPA has set forth to streamline things. This man's conviction was in 2008. His habeas petition was... I mean, here we are 10 years later. Well, in part, the difficulty is that the district court has erred and erred and erred and erred. First, the district court got Gonzalez versus Thaler totally wrong. Then the district court made this ruling about, we're just going to assume that sort of an unexplained decision is as a result of timeliness when there's a procedural bar argument in the case as well. It could have been either one. Then the district court applies this outdated rule about when the clock begins to run on the state habe from the original mandate instead of the re-sentence. And so part of the time lag here is that we've got like this succession of errors by the district court. Well, I think the biggest error it made was even accepting that amended petition because it was filed 14 months after the original petition. And all that acted as then is a placeholder petition which these courts have said is improper. Mr. Moore never moved the court to hold anything in abeyance while he further pursued his state remedies. I think flat out 14 months, boom, that's the end of the inquiry there under mail. You filed it, you amended it 14 months later, and that's it. I don't think there was any error whatsoever. If there was, then it certainly was harmless or should not be held to the district court accountable. Again, he delayed and delayed these proceedings. It's our position that under the certificate of appealability, this court doesn't have jurisdiction to review it. The district court didn't air in what it applied existing case law at the time and a case law that did come out after that rule was promulgated. And the fact that this amended petition was filed 14 months after the original petition, the court clearly should have denied those amended claims. Thanks very much. Thank you. Ms. Malik, you've reserved five minutes. Thank you, Your Honor. I'm just gonna briefly touch on two things, just factual aspects of this case that I wanna clarify. And if the court doesn't have any further questions, I'll sit down before my five minutes. The first notion is this idea that the pro se, proceeding pro se didn't raise the right legal argument. In fact, he did. He cited the right rule. He cited Florida Rule 9.141D5, which was in effect at the time. And that's at the state's appendix 76, Exhibit G at six. So the notion that he didn't even cite the right rule is just error. That's a different section of the pertinent rule, though, is it not? No, if you look at 9.141D5, and then you look at the Florida Rule, it does say that you have two years from when your sentence becomes final, which is exactly the rule that he pointed to. He cited the right standard. I believe maybe he got some of the dates wrong in his petition, but he was proceeding pro se. And it's clearly manifest error. It obviously meets the standard 459E motion. The next thing that I wanna briefly clarify is this notion that he delayed. Your Honors, EDPA requires you to exhaust claims in state court first. He did that. That's why there was a delay of 14 months. He had to wait for the state courts to decide his petition. Once the state courts decided his petition, he filed the federal amended petition within two weeks. So this notion that he's delaying or we're here 10 years later or eight years later because of errors that he did, I mean, he was diligent throughout. It was a combination of the fact that the district court made error after error combined with the fact that EDPA requires you to exhaust claims before state court that accounts for the delay. There was also a notion that maybe the petition wasn't timely. The timeline that I provided in my initial appellate brief clearly sets out how the clock stopped. I'm happy to go into that, but it seems that Your Honors understand that point and it doesn't seem like the state's telling you much other than, well, it's untimely without any explanation whatsoever. And it's frankly not in their brief as to why my clock or my timeline is off. So if the court doesn't have any questions about that, I'll simply sit down. Thank you very much. Thank you. Thank you both. And I noticed, Ms. Malik, that you were court appointed. We very much appreciate your firm taking on the burden of taking this case. Thank you, Ms. Nealon, as well for your efforts. And we'll proceed to the next case, which is Orion Marine Construction v.